UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISRAEL RIOS,<br><br>  Plaintiff,<br><br>  v.<br><br>DELMAR GREENLEAF, et al.,<br><br>  Defendants. | No.  2: 20-cv-0146 TLN KJN P<br><br><br>ORDER |

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is defendant Greenleaf's summary judgment motion.  (ECF No. 29.)  For the reasons stated herein, defendant's summary judgment motion is vacated and counsel is appointed to assist plaintiff with drafting an amended complaint.

Plaintiff's Claims

This action proceeds on the original complaint filed January 21, 2020, against defendant Dr. Delmar Greenleaf, employed at High Desert State Prison ("HDSP").  (ECF No. 1.)  Plaintiff alleges that defendant Greenleaf failed to prescribe an antibiotic to treat H-pilory virus in violation of the Eighth Amendment.

In particular, plaintiff alleges that in August 2017, plaintiff complained of pain in the upper right quadrant of his abdomen.  An ultrasound performed in October 2017 showed that plaintiff had gallstones measuring one and one-half inches in diameter.  On December 29, 2017,

1

plaintiff was taken to the emergency room based on complaints of excruciating pain in the upper left quadrant of his abdomen. A CT-scan showed that an ulcer had exploded in plaintiff's stomach. On January 10, 2018, an endoscopy showed that plaintiff had multiple peptic ulcers. A biopsy revealed the presence of the H-pilory virus, which was causing the ulcers.

Plaintiff alleges that defendant Greenleaf prescribed omeprazole to treat the ulcers, but failed to prescribe an antibiotic to treat the H-pilory virus.

The undersigned ordered service of plaintiff's claim alleging that defendant Greenleaf failed to prescribe an antibiotic to treat the H-pilory virus in violation of the Eighth Amendment. (ECF No. 12.)

Legal Standard Eighth Amendment Claim

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A determination of a "deliberate indifference" claim involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. Id. at 1059.

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." Id. The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial pain are examples of indications that a prisoner has a serious need for medical treatment. Id. at 1059-60.

A prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." Id. If a prison official should have been aware of the risk, but did not actually know, the official has not violated the Eighth Amendment, no matter how severe

2

the risk. Gibson v. County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002), overruled on other grounds by Castro v. Cty. of Los Angeles, 833 F.3d 1060 (9th Cir. 2016).

"Typically, a difference of opinion between a physician and the prisoner — or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." Edmo v. Corizon, Inc., 935 F.3d 757, 786 (9th Cir. 2019) (citations, quotations and brackets omitted). "But that is true only if the dueling opinions are medically acceptable under the circumstances." Id. (citation omitted).

Defendant's Summary Judgement Motion

Defendant moves for summary judgment on the grounds that he did not act with deliberate indifference by failing to prescribe an antibiotic to treat the H-pylori virus. In support of this claim, defendant relies on the declaration of California Training Facility ("CTF") Litigation Coordinator Galvan and defendant's amended declaration.[1] The undersigned sets forth the relevant portions of these declarations herein.

In his declaration, Litigation Coordinator Galvan states that plaintiff was housed at HDSP from February 22, 2017, through May 15, 2018. (ECF No. 31 at 2.) Plaintiff was incarcerated at Solano State Prison from May 15, 2018, through May 18, 2018. (Id.) Plaintiff was incarcerated at the Substance Abuse and Treatment Facility State Prison ("SATF") from May 18, 2018, through December 26, 2018. (Id.) Plaintiff was incarcerated at Wasco State Prison from December 26, 2018, through December 27, 2018. (Id.) Plaintiff was incarcerated at the Correctional Training Facility ("CTF") from December 2018 through the present. (Id.)

In his amended declaration, defendant Greenleaf states a right upper quadrant ultrasound was performed on plaintiff on October 5, 2017. (ECF No. 41 at 6.) The ultrasound showed at least one echogenic and shadowing gallstone, which measured 1.8 centimeters, and an impression of fatty liver, cholelithiasis and borderline common bile duct ("CBD") stone.[2] (Id.)

---

[1] On August 9, 2021, the undersigned ordered defendant to file an amended declaration identifying with specificity the page numbers of the medical records to which he referred, for each time he referred to them. (ECF No. 39.) On August 31, 2021, defendant filed an amended declaration. (ECF No. 41.)

[2] The record contains no evidence regarding how HDSP medical staff responded to the results of

Plaintiff presented to the Treatment Triage Area ("TTA") at HDSP on Friday, December 29, 2017, in the early evening. (Id. at 5.) On the weekend of December 29, 2017, defendant Greenleaf was on call at HDSP and received a telephone call regarding plaintiff's complaint regarding upper quadrant pain. (Id.) Defendant Greenleaf did not examine plaintiff in person, but upon learning of plaintiff's symptoms over the phone, defendant recognized that plaintiff needed a higher level of care available in the emergency room and sent plaintiff to the local hospital's emergency department. (Id.)

Defendant Greenleaf was not plaintiff's primary care physician. (Id.) However, the nursing staff at HDSP provided defendant with a very good verbal report including a history that plaintiff was known to have gallstones, which were diagnosed two months previously by ultrasound exam and that plaintiff had diabetes mellitus. (Id.)

Based on the report defendant received from the nursing staff, defendant felt that plaintiff needed immediate CAT scans, stat blood tests and other tests to rule out a number of possible life threatening causes of his acute epigastric abdominal pain. (Id.)

Prior to plaintiff arriving at Banner Lassen Hospital emergency room, defendant called ahead and spoke with Dr. Aiken, and provided him with defendant's report and concerns regarding plaintiff. (Id.)

In his declaration, defendant discusses the results of the tests performed at Banner Lassen Hospital. The emergency room records showed that plaintiff's CAT scan was performed and with other tests showed no evidence of ulcers, cholecystitis, pancreatitis, tumors, obstructions, emergent infections or organ perforations. (Id. at 7.)

A CT of plaintiff's abdomen and pelvis was taken on December 29, 2017, at Banner Lassen Hospital, and found no evidence of acute intra-abdominal pathology. (Id.)

The Banner Lassen Hospital emergency room records indicate that there had been no blood in plaintiff's stool as shown by the results of plaintiff's fecal occult blood test ("FOBT"), implying strongly that there was no intestinal bleeding source, such as peptic ulcers, present. (Id.)

---

the October 5, 2017 ultrasound.

The Banner Lassen Hospital's emergency room records show that the attending emergency room doctor gave plaintiff a presumptive diagnosis of possible peptic ulcers. (Id.) Defendant states that plaintiff's emergency room records from Banner Lassen Hospital were not sent back to HDSP with the patient on December 31, 2017, which created a challenge for the medical staff at HDSP. (Id.) Plaintiff's emergency room medical records from Banner Lassen Hospital were faxed to HDSP two days after plaintiff's return to HDSP. (Id.)

In his declaration, defendant also gives his opinion regarding the tests and results of tests given to plaintiff at Banner Lassen Hospital. Defendant states that the presumptive diagnosis of peptic ulcers given to plaintiff at Banner Lassen Hospital was later shown to be incorrect by an upper gastrointestinal ("GI") endoscopy performed on March 1, 2018, in Reno, Nevada. (Id.) Defendant also states,

> It appears from the plaintiff's medical records from Banner Lassen that the CAT scan performed on plaintiff did not report the plaintiff's gallstones, as had been expected. In my opinion, this inaccurate negative result prompted the emergency room doctor to think of ulcers as the cause of plaintiff's reported pain.

(Id.)

Defendant also states that the medical records show that the Banner Lassen emergency room doctor ordered an H-pylori blood serology test instead of the correct test, which is a stool antigen test. (Id.) Defendant states, "This created some confusion, as it appears the correct stool test was actually done either at the Banner Lassen Hospital emergency room or later at HDSP, which came back positive for H-pylori." (Id. at 8.)

After plaintiff returned to HDSP from Banner Lassen Hospital ER on Sunday, December 31, 2017, he was placed in the HDSP infirmary (the "CTC") for precautionary observation. (Id.)

Dr. Abdur-Rahman saw plaintiff in the HDSP CTC on Tuesday, January 2, 2018, at a time when plaintiff's emergency room records were still not available and discharged plaintiff to the yard where plaintiff's primary care physician could routinely perform follow-up care. (Id.)

Defendant states that HDSP did not receive plaintiff's H-pylori test results or the other emergency room records from Banner Lassen Hospital until they were faxed after being requested, at approximately midnight on January 2, 2018, after plaintiff had already left the

5

HDSP CTC. (Id.) Defendant states, "[Plaintiff] was then prescribed Omeprazole for the suspected acid stomach, gastroesophageal reflux, probable gastritis and the remote possibility of ulcers." (Id.) After reviewing the records cited by defendant in support of this statement, it is unclear who prescribed these medications, although it appears to have been HDSP medical staff.

Defendant states that the Banner Lassen Hospital emergency room records show that plaintiff had been given a prescription for Pylera, an antibiotic pill appropriate for H-pylori treatment. (Id.) However, this was unknown to medical staff at HDSP TTA and the CTC at the time plaintiff was being cared for in the HDSP CTC after returning from the Banner Lassen Hospital emergency room on December 31, 2017, due to the delay in receiving plaintiff's records from the Banner Lassen Hospital emergency room. (Id.)

Defendant states that despite not being plaintiff's primary care physician, defendant examined plaintiff in a follow-up appointment on January 5, 2018, three days after plaintiff left the CTC. (Id.) On that visit, the Banner Lassen Hospital emergency room records were present. (Id. at 9.) In his declaration, defendant states that he noted in his progress notes that the emergency room doctor ordered an H-pylori antibody serology level. (Id.)

In his declaration, defendant states that in his medical opinion, a serology test is not the correct test to determine if a patient has an active H-pylori infection. (Id.) Defendant states that plaintiff's serology test came back positive, which just meant that plaintiff's immune system had seen the bacteria in the past and produced anti-bodies. (Id.) "Thus, we did not know at that time if [plaintiff] had a current stomach infection of H-pylori." (Id.) "Thus, I stated in my chart note, 'I did not start antibiotics because the pylori test was not a stool antigen.'" (Id.)

Defendant states that the January 5, 2018 examination was his only visit with plaintiff. (Id.)

In his declaration, defendant goes on to discuss treatment plaintiff received for his stomach pain after January 5, 2018. The undersigned sets forth this discussion herein.

Plaintiff's CDCR medical records show that HDSP ordered a consultation with a gastroenterologist and an upper endoscopy for plaintiff. (Id.) CDCR medical records indicate that a specialist consultation and endoscopy was performed on plaintiff on March 1, 2018, in

1  Reno, Nevada.  (Id.)  The March 1, 2018 endoscopy showed no ulcers or past ulcer scars.  (Id.)

2  The March 1, 2018 endoscopy indicated gastritis and duodenitis.[3]  (Id.)

3       The results of plaintiff's March 1, 2018 biopsy later came back positive for H-pylori.  (Id.)

4  A Pathology Report by Digestive Health Associates dated March 6, 2018, showed results of the

5  biopsy of plaintiff's stomach of helicobacter pylori chronic active gastritis.  (Id.)

6       Plaintiff transferred to Solano State Prison on May 15, 2018.  (Id. at 10.)  Plaintiff

7  transferred to SATF on May 18, 2018 and stayed there until December 26, 2018.  (Id.)

8       On June 28, 2018, SATF Dr. Nyenke requested a gastroenterology consultation for

9  plaintiff on June 28, 2018.  (Id.)

10      Plaintiff's CDCR medical records indicate that plaintiff saw the specialist, Dr. Ravi, on

11  September 20, 2018.  (Id.)  Dr. Ravi noted plaintiff's recurrent abdominal pain could by caused

12  by "cholecystitis (gallbladder inflammation) or gastritis (inflamed stomach), due to non-steroidal

13  anti-inflammatory use."  (Id.)  Dr. Ravi mentioned H-pylori is positive but did not recommend

14  treatment at that time.  (Id.)

15      Dr. Ravi recommended a hepatobiliary iminodiacetic acid ("HIDA") scan to rule out an

16  Akinetic Gallbladder, which can cause pain (i.e., weak contractions of gallbladder seen in

17  diabetics often).  (Id.)  Dr. Ravi also advised plaintiff to continue the Omeprazole and add Bentyl

18  pills (an antispasmodic to decrease intestinal cramps from functional dyspepsia and irritable

19  bowel disease).  (Id.)

20      A HIDA scan was performed on plaintiff on November 29, 2018, and the results showed

21  an Akinetic gallbladder with a low ejection function.  (Id.)

22      Defendant states that plaintiff saw his primary care physician, Dr. Park, on January 17,

23  2019, "who very perceptively recognized that it was necessary to determine if the abdominal pain

24  was due to the stomach gastritis or the gallbladder (with stones and Akinesis as well)."  (Id.)

25      Dr. Park treated plaintiff the H-pylori with a 14-day regimen of appropriate antibiotics.

---

[3]  Gastritis is inflammation of the stomach lining.  See https://www.hopkinsmedicine.org/health/conditions-and-diseases/gastritis.  Duodenitis is an intestinal condition caused by inflammation of the duodenum lining.  See https://www.webmd.com/digestive-disorders/what-is-duodenitis.

(Id.)  Upon follow-up visit two weeks later, plaintiff's abdomen pain persisted.  (Id.)  Defendant states, "This strongly implied the H-pylori was NOT contributing much at all to the plaintiff's pain, thus, [plaintiff] needed his gallbladder removed."  (Id.)

Plaintiff had his gallbladder removed on June 13, 2018, "with resultant excellent pain resolution."  (Id. at 11.)

In his declaration, defendant goes on to state that in his professional opinion, 1) H-pylori had nothing to do with the gallstones plaintiff experienced during this time; 2) plaintiff did not have peptic ulcers as he contends in his complaint; 3) plaintiff's H-pylori does not and did not lead to ulcers or intestinal bleeding as alleged by plaintiff in his complaint; 4) plaintiff received an antibiotic prescription for H-pylori treatment by his follow-up care physician.  However, the antibiotic regimen had no benefit on his symptoms of abdominal pain; 5) only after plaintiff's gallbladder was removed was plaintiff's abdominal pain relieved; 6) a specialist who consulted with plaintiff felt that the gastritis was caused by plaintiff taking long term NSAIDS; 7) plaintiff's gallbladder disease is not acute or dangerous or life threatening; 8) plaintiff's follow-up doctors did appropriate tests and discovered that plaintiff's gallbladder not only had stones, but was dysfunctional (akinetic), in that it emptied 14% on HIDA scan, whereas a normal rate is 30% or above; this also caused plaintiff pain; 9) plaintiff's gallbladder disease was treated appropriately with eventual removal.  (Id. at 11-12.)

Defendant concludes that plaintiff's recent medical history supported a diagnosis that plaintiff's pain was related to his gallstone or liver.  (Id. at 12.)  Defendant states,

> The medically acceptable practice, as well as the practice that accords with CDCR guidelines, to treat an injury like plaintiff's upper left quadrant pain is to assess the injury, proceed through conservative treatment until it is exhausted, and proceed to surgical assessment and intervention.

(Id.)

Defendant also states,

> It is my professional opinion that despite the well-known challenges involved in continuity of care for patients (inmates) in a very large prison system [plaintiff] received good and appropriate and timely medical care even though he was transferred a few times to different facilities.  His care team persisted in their attentiveness in following

> up with him and getting appropriate tests and consultations and accomplishing a successful medical outcome. Because of my training, my experience (40 years practicing medicine) and extensive review of Mr. Rios medical records in CDCR, I can confidently state it is my professional medical opinion that [plaintiff] received from all practitioners caring for him in CDCR and private offices all reasonable, necessary and medically acceptable care and treatment. This medical care was consistent with community standards and consistent with the high degree of knowledge and skill ordinarily possessed and exercised by members of my medical profession.

(Id. at 13.)

Discussion

Defendant contends that he was involved in the treatment of plaintiff's pain on two occasions: December 29, 2017, and January 5, 2018.

*December 29, 2017*

Defendant argues that on December 29, 2017, he did not fail to respond to plaintiff's serious medical need when he directed HDSP staff to take plaintiff to the emergency room.

The undersigned agrees with defendant that he did not fail to respond to plaintiff's serious medical need on December 29, 2017, when he directed HDSP staff to take plaintiff to the emergency room.

*January 5, 2018*

Defendant does not dispute that plaintiff had a serious medical need on January 5, 2018. Defendant argues that he did not act with deliberate indifference on January 5, 2018, by failing to prescribe antibiotics because there was no clear evidence to show that plaintiff had H-pylori or that plaintiff's upper quadrant pain was due to H-pylori. (ECF No. 30 at 16.) Citing plaintiff's treatment after January 5, 2018, by other doctors, defendant argues that nothing in plaintiff's medical records indicates that plaintiff's pain was (ever) caused by H-pylori. (Id. at 16-17.) Defendant argues that plaintiff's presentation and immediate medical history favored a diagnosis that plaintiff's pain was instead attributable to gallstones indicated by the October 2017 ultrasound. (Id. at 16.)

The undersigned observes that in his report from the January 5, 2018 examination of plaintiff, defendant wrote, in part, that a "serologic lab showed H pylori antibody positive and the

9

emergency room doctor was [sic] felt he might have ulcers and him [sic] on omeprazole and advised antibiotic regime for H pylori…I did not start antibiotics because the pylori test was not a stool antigen.  And his history of pain seemed much more likely to be in support of gallstone and or liver pain." (ECF No. 32-2 at 58.)  Defendant also writes, "It should be noted stools were tested for H pylori and were negative as well as they were negative for …"  (Id.)

In a section of the January 5, 2018 exam report titled "Past Medical History," defendant wrote, "He had been mild right upper quadrant pain over the last 6 months or so prompting the past ultrasound."  (Id.)

In a section of the January 5, 2018 exam titled, "Potential for lack of continuity of care," defendant wrote,

> Be [sic] because the patient is feeling good now.  And is not having abdominal pain other than when I press on his right upper quadrant I have counseled him to eat light meals avoid heavy or fatty meals.  Avoid acid food.  Avoid coffee.  Given statins occasionally can inflame the liver.  Advised him to stop his atorvastatin for now.
>
> I will have the patient return in 2 weeks.
>
> I instructed him to come back immediately and report to staff if abdominal pain gets worse or associated with nausea vomiting fevers chills abdominal distention melena I daily Zetia diarrhea problems urinating.

(Id. at 60.)

The HDSP records from December 29, 2017, describe plaintiff's pain as "acute." (ECF No. 32-1 at 69.)  The January 5, 2018 records indicate that defendant believed that plaintiff's acute pain was caused by his gallbladder or liver, rather than H-pylori.[4]  The undersigned is troubled that defendant took no action on January 5, 2018, to determine whether plaintiff's gallbladder or liver caused plaintiff's acute pain.[5]  Had defendant ordered further testing, etc. on

---

[4] Defendant apparently maintained this belief despite the negative result of plaintiff's CAT scan at Banner Lassen Hospital, which defendant describes in his declaration as "inaccurate."

[5] In his declaration, defendant state that on December 29, 2019, HDSP nursing staff told him that plaintiff was known to have gallstones and that plaintiff had diabetes mellitus.  In his declaration, defendant does not address the significance of plaintiff's gallstones with the diabetes mellitus diagnosis.  However, plaintiff was later diagnosed with an Akinetic Gallbladder, i.e., weak

January 5, 2018, to determine the cause of plaintiff's acute pain, plaintiff may have received his gallbladder surgery sooner and suffered less pain.

The undersigned also observes that the evidence regarding why defendant failed to prescribe antibiotics on January 5, 2018, is somewhat confusing. In his declaration, defendant indicates that he did not prescribe antibiotics on January 5, 2018, because Banner Lassen Hospital performed a serology test, which is not the correct test to determine if plaintiff had an H-pylori infection. However, defendant does not explain why he did not order the correct stool test. In his declaration defendant also states that the correct stool test was done at either Banner Lassen Hospital emergency room or later at HDSP, which came back positive for H-pylori. It is unclear when this test was conducted. However, in his report from January 5, 2018, defendant wrote that plaintiff's stools were tested for H-pylori and they were negative.

In the complaint, plaintiff does not raise an Eighth Amendment claim alleging that on January 5, 2018, defendant Greenleaf failed to take further steps to diagnose and/or treat the acute pain plaintiff suffered on December 29, 2017, despite defendant's apparent belief that plaintiff's gallbladder or liver caused the pain. For this reason, defendant did not address this issue in the summary judgment motion. However, the undersigned grants plaintiff leave to file an amended complaint raising this and any other related claims.[6] The undersigned also appoints counsel to assist plaintiff in the drafting of the amended complaint. Defendant's summary judgment is vacated without prejudice.

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's summary judgment motion (ECF No. 29) is vacated; and

/////

/////

/////

////

---

contractions of gallbladder seen in diabetics often.

[6] In doing so, the undersigned is not asserting that any defendants are liable for such actions or inactions, but merely that plaintiff should have an opportunity to articulate all appropriate claims.

2. This action is referred to the supervisor of the court's pro bono panel, Sujean Park Castelhano, to find an attorney for the limited purpose of drafting an amended complaint.

Dated: October 19, 2021

*Kendall J. Newman*
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Rios146.sj(v)